# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CASE NO. 3:16-CR-222 |
| | : | |
| | : | (JUDGE MANNION) |
| v. | : | |
| | : | |
| LOUIS ANTHONY ZAYAS | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Pending before the court is defendant Louis Anthony Zayas's motion for withdrawal of his guilty plea. (Doc. 52). As the government has filed a brief in opposition to the defendant's instant motion, this matter has been fully briefed and is now ripe for disposition. (Doc. 55). For the following reasons, the defendant's motion to withdraw his guilty plea will be **GRANTED**.

## I. BACKGROUND

On August 9, 2016, a federal grand jury issued a three-count indictment against Zayas in the above-captioned case, charging him (1) in Count I with the knowing and intentional "distribut[ion] and possess[ion] with intent to distribute a controlled substance . . . [where the] serious bodily injury and death of a person . . . resulted" in violation of 21 U.S.C. §841(a)(1) and

§841(b)(1)(C); (2) in Count II with the knowing and intentional "distribut[ion] and possess[ion] with intent to distribute a controlled substance . . . within 1,000 feet of . . . a daycare center with an attached outdoor playground" in violation of 21 U.S.C. §841(a)(1), §841(b)(1)(C), and §860; and (3) in Count III with the knowing and intentional "distribut[ion] and possess[ion] with intent to distribute a controlled substance . . . to a pregnant individual" in violation of 21 U.S.C. §841(a)(1), §841(b)(1)(C), and §861(f). (Doc. 1).

On August 10, 2016, before U.S. Magistrate Judge Joseph Saporito, Zayas entered a plea of not guilty to the crimes charged, at which time the court appointed counsel ("First Counsel") to represent Zayas pursuant to the Criminal Justice Act ("CJA"). (Doc. 11). Later, on April 10, 2017, upon the advice of First Counsel, Zayas entered a plea of guilty to Count I of the indictment, distribution of a controlled substance resulting in a person's death, pursuant to a plea agreement with the government. (Doc. 28; Doc. 30). The plea agreement enabled the defendant to plead guilty to one of two pending charges that carried twenty-year mandatory minimum sentences, reducing his mandatory minimum exposure by half. (Doc. 28). The circumstances and events during the time leading up to the defendant's guilty plea form the basis for this court's analysis and examination of the instant motion.

On June 23, 2017, Zayas filed on the docket a written *pro se* letter, formally requesting the court's permission "to retract [his] plea of guilty" due to his belief that he was "not properly informed or prepared to make the decision of entering this plea and accepting this plea agreement." (Doc. 34). Zayas notes that he "was expecting to have more time for review" of the evidence against him on Count I of the indictment. (*Id.*). Specifically, Zayas asserts that he was never made aware of certain photographs of the crime scene depicting the bags of controlled substances that purportedly killed the victim. (Doc. 53). Zayas believes that such evidence would exculpate him because, he claims, the bags of drugs that he possessed were a different color from those displayed in the crime scene photographs. (Doc. 53; Doc. 70). Zayas further asserts that First Counsel gave him "the impression that if [he] . . . question[ed] any part of the . . . plea agreement," he would go to trial in a case that was portrayed to him as inevitably " 'unfightable' regardless of [his guilt or] innocence." (*Id.*).

Due to differing opinions on legal strategy, Zayas's legal representation changed twice in relatively short order. On July 13, 2017, First Counsel filed a motion to withdraw as Zayas's attorney, citing an irreconcilable "breakdown in the attorney[-]client relationship." (Doc. 40). The court granted this motion and appointed an Assistant Federal Public Defender ("Second Counsel") to

represent Zayas on July 20, 2017. (Doc. 43). On September 13, 2017, Second Counsel filed a motion to withdraw as Zayas's attorney, offering that the "attorney-client relationship ha[d] been irretrievably broken . . . obstruct[ing] effective and ethical representation." (Doc. 46). The court, in turn, granted this motion and appointed Zayas's current attorney ("Present Counsel") pursuant to the CJA. (Doc. 47; Doc. 48).

Present Counsel briefed the instant motion to withdraw Zayas's plea of guilty in December 2017, arguing that Zayas has made the requisite showing for a withdrawal of his guilty plea. (Doc. 52; Doc. 53). The court thereafter entertained the presentation of oral testimony at an evidentiary hearing on the instant motion. (Doc. 70). During this hearing, Zayas knowingly, intelligently, and voluntarily waived his attorney-client privilege with respect to his communications with First Counsel, subjecting those communications to discovery in this litigation and scrutiny by this court. (*Id.*).

## II.  LEGAL STANDARD

A valid guilty plea must "represent . . . a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). "Waivers of constitutional rights not only

must be voluntary, but [also] must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

Federal Rule of Criminal Procedure 11(d)(2)(B) provides in pertinent part that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). However, "[o]nce a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citing *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001)). The court typically considers three factors in determining whether a "fair and just reason" for withdrawing the plea exists: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.* (citing *United States v. Huff*, 873 F.2d 709, 711 (3d Cir. 1989)).

The burden of demonstrating a "fair and just reason" falls on the defendant, and that burden is substantial. *United States v. Hyde*, 520 U.S. 670, 676-77 (1997); *United States v. Isaac*, 141 F.3d 477, 485 (3d Cir. 1998). A "bald assertion" of innocence is insufficient, and the defendant must present

must be voluntary, but [also] must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

Federal Rule of Criminal Procedure 11(d)(2)(B) provides in pertinent part that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). However, "[o]nce a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citing *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001)). The court typically considers three factors in determining whether a "fair and just reason" for withdrawing the plea exists: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.* (citing *United States v. Huff*, 873 F.2d 709, 711 (3d Cir. 1989)).

The burden of demonstrating a "fair and just reason" falls on the defendant, and that burden is substantial. *United States v. Hyde*, 520 U.S. 670, 676-77 (1997); *United States v. Isaac*, 141 F.3d 477, 485 (3d Cir. 1998). A "bald assertion" of innocence is insufficient, and the defendant must present

must be voluntary, but [also] must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

Federal Rule of Criminal Procedure 11(d)(2)(B) provides in pertinent part that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). However, "[o]nce a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citing *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001)). The court typically considers three factors in determining whether a "fair and just reason" for withdrawing the plea exists: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.* (citing *United States v. Huff*, 873 F.2d 709, 711 (3d Cir. 1989)).

The burden of demonstrating a "fair and just reason" falls on the defendant, and that burden is substantial. *United States v. Hyde*, 520 U.S. 670, 676-77 (1997); *United States v. Isaac*, 141 F.3d 477, 485 (3d Cir. 1998). A "bald assertion" of innocence is insufficient, and the defendant must present

affirmative evidence in support of his assertion of innocence. *United States v. Schwartz*, 403 F. App'x 781, 784 (3d Cir. 2010) (citing *Jones*, 336 F.3d at 252). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons [for] impos[ing] on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Brown*, 250 F.3d at 815 (quoting *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992)). Nonetheless, the Third Circuit has "enunciated the principle that the withdrawal of a guilty plea before sentence is imposed should be 'freely allowed' " when the appropriate circumstances are present. *United States v. Young*, 424 F.2d 1276, 1279 (3d Cir. 1970) (citing *United States v. Stayton*, 408 F.2d 559, 562 (3d Cir. 1969)).

## III. DISCUSSION

The court will consider in turn the Third Circuit's three factors for deciding whether a "fair and just reason" for withdrawing Zayas's guilty plea exists: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Jones*, 336 F.3d at 253.

As a preliminary matter, while Zayas originally entered a plea of guilty on April 10, 2017, the defendant subsequently filed a *pro se* letter in which he has pointedly and unequivocally declared his own "innocence." (Doc. 34; Doc. 53). Zayas has been adamant in this assertion, and indeed, this assertion forms the underlying factual basis for the instant motion. This first factor for consideration has therefore been satisfied.

The second factor concerns the relative "strength of the defendant's reasons" for requesting a withdrawal of his guilty plea. *Jones*, 336 F.3d at 253. Beyond his baseline assertion of innocence, Zayas bases his claim that he is legally entitled to withdraw his guilty plea on the fact that, prior to entering his guilty plea, he lacked a meaningful opportunity to review items of discovery that were material to establishing his guilt or innocence on Count I of the indictment. (Doc. 1; Doc. 53). Instead, Zayas claims that he merely relied upon the manner in which First Counsel had presented the evidence to him, so he was never made aware of potentially exculpatory evidence nor given the chance to discuss said evidence with his attorney. (Doc. 70).

Testimony presented at an in-person evidentiary hearing on the instant motion reveals that First Counsel believed Zayas's case painted a "dim picture." (*Id.*). First Counsel testified that due to "the [statutory] mandatory minimums . . . [Zayas] could be in jail for the rest of his life." (*Id.*). Thus, First

Counsel opined that "the best strategy was to continue to pursue [cooperation with the government and a motion for downward departure under §5K1.1 of the U.S. Sentencing Guidelines]." (*Id.*). First Counsel advised Zayas that pleading guilty would be the best strategy because, according to First Counsel, Zayas's case entailed "facts that were not challengeable," regardless of his guilt or innocence. (*Id.*). Put simply, Zayas interpreted First Counsel's presentation of the evidence as entailing a binary choice to either plead guilty or go to trial and face certain conviction due to the overwhelming weight of the government's evidence against him. (*Id.*).

While First Counsel summarized selected items of discovery for Zayas to review during the time leading up to the guilty plea, First Counsel testified that he "probably could have documented things a little better than [he] did" during plea discussions with the government and during conversations with his client about whether to accept a plea agreement. (*Id.*). When asked about which specific portions of the overall corpus of discovery that First Counsel showed to Zayas, First Counsel responded that he "would have made notes and showed [Zayas] basically what was in the discovery packet . . . and then reviewed . . . the specific items [he] thought would be part of the prosecution's case-in-chief." (*Id.*). First Counsel only "remember[ed] showing [Zayas] certain documents." (*Id.*). Most notably, while First Counsel showed Zayas "portions

of the text messages," he "did not review with [Zayas] pictures from the scene of the death." (*Id.*). These pictures, however, were critical to the defendant's ability to make a reasonably informed decision on his guilty plea, as the bags of controlled substances photographed at the crime scene were the color blue, while Zayas had mentioned during an earlier interview with the Drug Enforcement Agency ("DEA") that the bags of controlled substances he distributed to the victim were white. (*Id.*).

Despite having met with Zayas "more than two times—probably eight," First Counsel "never left any discovery things with . . . Zayas" for Zayas to review personally. (*Id.*). Zayas ultimately asked First Counsel if he could view his entire discovery packet, and while First Counsel sent Zayas "all of the documents," First Counsel neglected to send "all of the . . . photographs," reasoning that because "they were still [in] digital [format]," he could only "provide certain" photographs to his client. (*Id.*). Nor did First Counsel partake in any specific discussions with Zayas regarding the crime scene photographs or the "color of the bags" depicted in those photographs. (*Id.*). Zayas thus remained wholly uninformed about this potentially exculpatory evidence throughout the time leading up to the entry of his guilty plea.

In essence, Zayas argues that his guilty plea was entered in reliance on First Counsel's summarized advice, as opposed to a thorough, informed

review of the pertinent discovery. (Doc. 53). Perhaps most importantly, Zayas asserts that, had he been made aware of these discovery materials prior to entering his guilty plea, he never would have pleaded guilty to begin with. (*Id.*). These reasons underpinning Zayas's request to withdraw his guilty plea are sufficiently strong. A valid guilty plea must "represent . . . a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56. An intelligent act must be "done with sufficient awareness of the relevant circumstances and likely consequences." *McMann v. Richardson*, 397 U.S. 759, 766 (1970) (citing *Brady*, 397 U.S. at 748). The decision to plead guilty to a crime cannot be made "intelligent[ly]" unless the defendant was fully informed about the nature and implications of the evidence tying him to the crimes charged. *Hill*, 474 U.S. at 56. Here, the fact that Zayas lacked sufficient opportunities to review the photographs displaying blue bags and to discuss such evidence with his attorney directly undermined his capacity to take his guilty plea "intelligent[ly]." *Id.* "[T]he strength of the defendant's reasons for withdrawing the plea" therefore cuts in Zayas's favor. *Jones*, 336 F.3d at 253.

The final factor for the court's consideration inquires "whether the government would be prejudiced by the withdrawal." *Id.* Roughly two months elapsed between the time when Zayas entered his plea of guilty and the time

when Zayas filed his *pro se* letter asserting his innocence and requesting to withdraw said plea. (Doc. 53). Zayas initially expressed to First Counsel his desire to withdraw his guilty plea about one month after his guilty plea was taken, and he filed his *pro se* letter about one month thereafter. (Doc. 34). The conduct that constituted the alleged underlying crimes occurred roughly two years ago during the summer of 2016. (Doc. 1). While the government attempts to argue that a withdrawal of Zayas's plea might cause prejudice by "result[ing] in the fading of witnesses' memories" and adversely "impact[ing] their willingness to cooperate," the timeline at play here is not so unreasonable that it would prejudice the government's ability to pursue criminal charges against the defendant. (Doc. 55). Most of the government's evidence in this case is well-documented in reports, photographs, and telephonic communications. Moreover, the government itself has not raised the possibility that any witnesses or other evidence would be lost or rendered useless due to Zayas's attempt to withdraw his guilty plea. Nothing in this case raises any pressing concerns on the issue of prejudice to the government, so this final factor for consideration similarly weighs in favor of the defendant.

    The government is quite correct in pointing out that "[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's

whim." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (citing *United States v. Martinez*, 785 F.2d 111, 113 (3d Cir. 1986)). However, the court retains broad discretion in deciding a motion to withdraw a guilty plea, and "[t]he good faith, credibility, and weight of a defendant's assertions . . . in support of a motion under [Rule 11(d)(2)(B)] are preeminently issues for the hearing court to decide." *Gov't of Virgin Islands v. Berry*, 631 F.2d 214, 220 (3d Cir. 1980) (quoting *United States v. Washington*, 341 F.2d 277, 281 (3d Cir. 1965), *cert. denied*, 382 U.S. 850 (1965)).

In this case, Zayas was never apprised of the existence of certain crime scene photographs depicting bags of controlled substances of a different color than those that Zayas claims he distributed to the victim. (Doc. 70). The defendant's lack of awareness of this discovery had a direct bearing on his capacity to take his guilty plea "intelligent[ly]." *Hill*, 474 U.S. at 56. Further, Zayas has insisted that he would not have pled guilty had he been able to review this vital evidence beforehand. (Doc. 34). Overall, the defendant has asserted his own innocence in this matter, provided a fair and just reason of sufficient strength, and demonstrated that there would be no prejudice to the government from the withdrawal. (Doc. 53). As such, the defendant has made the requisite showing to justify withdrawing his plea of guilty.

## IV. CONCLUSION

For the reasons outlined above, the defendant's motion to withdraw his guilty plea will be **GRANTED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION
United States District Judge**

**Dated: August 9, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2016 CRIMINAL MEMORANDA\16-222-01.docx